The next case is 20-1065, Avenue Innovations v. E. Mishan & Sons. Mr. Corcoran. Yes, Your Honor. Good morning. May it please the Court, Peter Corcoran for the appellant, Avenue Innovations. Your Honor, whether viewed as a genuine dispute of material fact or a claim construction dispute, the District Court's summary judgment ruling should be reversed for at least three reasons. First, the Court erred by fundamentally altering the party's factual dispute of infringement by putting itself into the shoes of a person of ordinary skill in the art and finding that no genuine dispute of material fact of infringement can exist because no portion of the handle of the car cane is located exteriorly of the vehicle when placed in a striker parallel to the seats. To form this conclusion, the Court transformed the party's stipulated definition of the claim term as outside the vehicle to beyond the exterior walls or metal paneling of the car. Second, the District Court's analysis did not properly consider the key point of Dr. Hoekstra's unrebutted expert declaration that, as understood by persons of ordinary skill in the art, the exterior of the vehicle begins at the cabin seal,  shown and described in the 189 patent as number 18 in Figure 1 and in Column 6, Lines 55 through 63 of the patent. Your Honor, the outside portion of the door is not the vehicle? Your Honor, the outside portion of the door is the vehicle, but the question here is where does the outside begin? Well, exterior and outside would seem to be equivalent terms. Your Honor, when you look at the entire intrinsic record, when you look at the 189 patent, when you look at the prior art of record, and you look at Dr. Hoekstra's declaration that opines based on the intrinsic record, the conclusion is that the outside begins at the cabin seal, as understood by persons of ordinary skill in the art, and the 189 patent describes the interior of the vehicle, and the elementary opposite of interior is exterior. Counsel, your claim doesn't say exteriorly of the interior of the vehicle, right? So, the only way I can... Right. If I think that that language should be read into your claim because of something in the specification and how you defined or distinguished exterior from interior. Is that right? Your Honor, well, the claim says exteriorly of the vehicle, okay? Right. And the only reference in the patent... It could have. You could have drafted it exteriorly of the interior of the vehicle, right? Because you do have an element in your claim in the figures that shows the interior of the vehicle, right? Right, and the opposite of interior is exterior, so... Right, but it doesn't mean that everything outside the interior of the vehicle is exterior of the vehicle. It means it's exterior to the interior of the vehicle. Well, Your Honor, relying on Dr. Hoekstra's unrebutted expert testimony... By the way, Michonne had an expert in the IPR, and they chose not to rebut Dr. Hoekstra's declaration. To persons of ordinary skill in the arts, when reading the 189 patent specification, the outside of the vehicle begins at the cabin seal. Now, the parties stipulated that exteriorly... Counsel, does this issue need expert testimony? In this case, apparently, Your Honor. Mr. Corcoran, this is Judge Shen. What was it that Mr. Hoekstra or Dr. Hoekstra relied upon as a basis for saying people of skill, I don't know, I guess in the vehicle arts, would understand that something that exists in the well of the car wall is outside the vehicle? Your Honor, I believe Dr. Hoekstra was saying that anything outside the cabin seal is where the outside of the vehicle begins. Right. So we're talking about things that might be positioned within the walls of a car, and I'm just wondering what did Mr. Hoekstra point to, or Dr. Hoekstra point to, if anything, as a basis for saying anything that's located within the walls of a car is something that we in the art identify as being outside of the vehicle? Your Honor, Dr. Hoekstra pointed to figure 1, number 18, where the patent describes the interior passenger compartment of the vehicle. Okay. Well, that's intrinsic evidence, and it's up to us to understand as a legal question how to understand the import of the intrinsic evidence, but my understanding is you are putting Dr. Hoekstra up as an expert in the vehicle arts and how people in that field at the time of this invention would understand the phrase exteriorly of the vehicle, and in his opinion, as a matter of fact, they would understand something that exists tucked away in the walls of the car as being outside the vehicle, and I'm asking you, is there something that he pointed to as a basis for that factual opinion? Your Honor, Dr. Hoekstra... Aside from anything inside this patent? Outside the patent? No, Your Honor. Okay. Then when we look inside this patent, then what about what we see at column 9, starting around line 36, where we see a discussion of the striker, which is located within the walls of the car, and it says leg portion 24A of the striker is closer to the exterior of the vehicle, while the leg portion 24B is closer to the interior of the vehicle, and to me... Your Honor... The clean understanding of that is that the one leg that is closer to the outside of the vehicle, like outside the walls of the vehicle, is where the leg portion 24A is located. To me, that's a clear communication of an understanding of what exterior of the vehicle means, which means outside the walls of the vehicle. What's wrong with that understanding in this passage at column 9? Your Honor, that passage actually highlights the factual dispute of the parties, because leg 24B points towards the inward side of the vehicle. So just as 24A may point to the outwardly side of the vehicle, 24B points to the inwardly side of the vehicle. Right. And then the claim language is the phrase exteriorly of the vehicle, and so now we're getting some understanding here what the patent owner thinks that term means by reference to leg portion 24A as being closer to the exterior of the vehicle compared to leg portion 24B, and we know that the striker is located in the wall of the car. Right, Your Honor. I'm sorry. Why wouldn't that mean anything inside the wall of the car as is true of where the striker is positioned is not exterior of the vehicle? Well, Your Honor, 24A, pointing towards exteriorly of the vehicle, is not... The patent is not saying that 24A is actually outside the vehicle. It's pointing towards the exterior, just like 24B is pointing towards the interior. So it's kind of a no-man's land. I'd like you to move on to indefiniteness because that actually invalidates some of your claims. Why wasn't the court correct in finding language that said most convenient when we find it here? Offer the position most convenient to the user. That sounds indefinite. Different users have different conveniences. I agree, Your Honor, but under Nautilus and Chronic Tech, this court is supposed to consider the entire claim and not just focus on one specific, allegedly indefinite claim term. And when you look at the entire claim as a whole, claims one and two, you'll see that to a person of ordinary skill in the art, when he or she reads that claim, they can follow that claim. And when they get to the part of most convenient to the user, most convenient to the user really has no utility in the claim because the device is locked down in the... Counsel, this is Judge Schill. I just wanted to ask you. I read that claim and I think it might have meaning in the context of the phrase secure means mounting an elongate member for limited movement within a plane substantially parallel to the fixed surface to at least one operative position most convenient to the user when pulling or pushing on said handle. I think your position, as I understand it, is you've got to read that whole clause in its entirety together and in light of the prosecution history. And when I do that, I think it means something like this, and I want to know if you agree with me. I think that it means that you can move the elongate member, the handle the person can hold on to, within a plane. It's only within a particular plane parallel to the fixed surface. And then there's... So there's within that limited range of movement within the plane that is substantially parallel to the fixed surface, a user can move the elongate member to a position most convenient for him or her to push or pull while standing. And I really get that understanding from looking also at the comments made, A332, in the prosecution history where the whole phrase was discussed in distinguishing the prior, not just that language of most convenient to the user. So do you agree with my understanding of this limitation, or do you have a different understanding of what that limitation as a whole means? No, Your Honor, I think you pinpointed it perfectly, and it's explained in our briefs that the applicant added the language at A332 in order to overcome the prior arc, but really focused on... I don't know if I'm getting rid of my rebuttal time. Really focused on the limited movement... I'm sorry, the operative position of the device, more so than most convenient to the user, and focused on that with reference to the pattern of figures 1, 2, and 6. So, Gloria, if I may, I'd like to ask one last question before we go to the other side. Certainly. Thank you. Hypothetically, Mr. Corcoran, what if we were to affirm a summary judgment of non-infringement of Claims 3-8 and 20, but then we're trying to decide what to do with Claims 1 and 2 and this indefiniteness ruling? This patent is expired now, right? It expired a year ago? Yes, Your Honor. So, all that's left is, I assume you would want to try to litigate the infringement question for Claims 1 and 2 if they were to survive on appeal? Yes, Your Honor. And I guess through an affirmance of Claims 3-8 and 20 of no infringement, I don't see any legitimate theory for infringement of Claims 1 and 2 with the accused Carton Kane. You know, Claim 2 says exteriorly of the vehicle. So, Claim 2 is definitely out. And then Claim 1 talks about the elongate member extending away from the seat and talks about the limited movement being within a plane substantially parallel to the fixed surface. So, I don't see the Carton Kane positioned to meet either of those limitations of Claim 1. So, I don't see how you could possibly have any non-frivolous allegation of infringement under the circumstances. If we were to affirm the summary judgment of non-infringement here on Claims 3-8 and 20. Okay. To answer your question, Your Honor, at least under Claim 1, it depends on the angle of the striker. Not every lateral surface in the door well is perfectly perpendicular to the car seats. Some are angled. So, if the striker is angled away from the car seat, the elongate member would extend away from the seat and position the sin handle at a point remote from the seat. But does the car cane move? No, Your Honor, but if it's positioned within a striker that's angled away from the seat, the device would point remote from the seat. Are you aware of any... I'm sorry. Are you aware of any strikers that would allow a device to be in a plane substantially parallel to the fixed surface? What I know of a striker that's not parallel to the fixed surface. I mean, it's... All the... I mean, most strikers are parallel to the fixed surface, but it depends on the angle of the fixed surface. I mean, not every... Not every fixed surface angle is perfectly perpendicular to the interior of the vehicle. Some lateral surfaces, for example, in trucks, SUVs, and minivans, the lateral surface is angled outwardly from the vehicle per the car door design. So, there are some vehicles out there that would fit this claim language to where... It sounds like just a question whether there's a case of controversy in the future or a viable claim against someone else. I think we have your point, Mr. Coughlin. Let's start here from Mr. Glass. Thank you, Your Honor. James Glass for appellee, if you may please report. I'll start actually right where we left off. In terms of the infringement of Claims 1 and 2, as I believe it was Your Honor Chen that pointed out, Claim 2 includes this notion that the device must be exterior... The handle or portion of the handle must be exteriorly to the vehicle. There's no... That term has been construed consistently by stipulation across all terms. That claim cannot be infringed. With respect to Claim 1, you... Again, I believe it was Judge Chen, Your Honor, you anticipated our argument should there be a remand. There is no mystery that this device is called... We've referred to this in shorthand at the District Court as the parallel orientation. We had to because they had three different infringement contentions. One was perpendicular, one was parallel, one was parallel then perpendicular. So, the notion that there can be infringement of Claim 1, there can't be. There's no evidence in the record. There's certainly no evidence below of the strikers Mr. Cochran spoke of where the device is in unparalleled, non-parallel position. So, working backwards, I'm going to... I'll start... I intended to start with the indefiniteness issues. I'm going to start with the exteriorly to the vehicle issue. I'll be very brief. Your Honors, I've looked at what we pointed out to in the briefs. It's clear that our points have come through. One additional point I'll relay. Judge Lurie, Your Honor, you pointed out that what we're talking about, a vehicle.  exteriorly to the vehicle. Common sense. We all know what a vehicle is. The judge, Judge Faya, below she pointed out that if it's exterior to the vehicle, it's exterior to the metal shell of the car. But we don't have to even go that far. The claim itself tells us what is included in the vehicle. Claim two, specifically says the vehicle includes the door. The vehicle includes the post, the pillar. The post or pillar defines a lateral surface. Well, if the vehicle includes those elements and the lateral surface is what the device is mounted on. If the vehicle includes those elements and the handle has to be exterior to the car, of course, it has to be exterior to those elements. And the notion that this court dismissed or ignored their expert, Your Honor's pointed out, we listened to the Vitronics case. We know this well. We listened to expert testimony, but it cannot contradict the intrinsic record. And that's exactly what the court found that was in Appendix 20. She considered the expert opinion and she found it to be contrary to the intrinsic record. Your Honor, so I'm not going to go into any more depth on that argument unless you have any questions. I'm going to move on to the indefiniteness portion. You may. Thank you, Your Honor. Just, I'm going to walk through very briefly the district court's analysis and then walk through appellants and concussion. It is undisputed here. It's undisputed that- On the indefiniteness issue, one of the concerns I had was the district court didn't quite grapple with the statements in the prosecution history. And so I wanted your thoughts on the prosecution history, which I think, you know, it gives explanation as to what is meant by within a plane substantially parallel over the fixed surface to at least one operative position most convenient to the user when pushing or pulling. We're referring to specific figures in this specification. And I just, and you know, it's that whole phrase that was relied on to distinguish the priority. I didn't really see the district court grapple with that. So what do you think of that? Why shouldn't I rely on that prosecution history to understand what these claims mean? I think you should rely on the prosecution history. And maybe it didn't come out quite as clear as I'd hoped in the briefing. We focus on the entirety of the phrase. What they added during prosecution wasn't this notion of just moving to an operative position. And it wasn't just moving to a convenient position. They decided very specifically that in light of the Bergstein reference, which was that device that was pushed into the door jam, that they would add a limitation that requires it to move to an operative position most convenient to the user. They narrowed, not only the operative positions, but they narrowed that to the most convenient operative positions. Yes, they focused on embodiments one, two, and six. I was going to get to this later. I'll get to it now. The claims specifically encompass other embodiments. Figure 9A I think is very important. We know that that's encompassed by claims one and two because we stipulated to a construction. Claim 9A. Can I interrupt you for a minute? Absolutely. I understood that this piece showing that there's different positions where the handle could be depending on whether the user was pushing or pulling or what sort of vehicle or the kind of chair the device was being used in or how short or tall a person is. That those kinds of things can make a difference in the plane of movement, the plane of limited movement, what is convenient for any given particular user. I'm not sure if I understand the question. I think that's exactly the point that within that plane of movement when the device is used when it's attached to the vehicle, in that plane of movement there is any number of convenient positions that the user can select when pushing or pulling. Again, I'll get back to the figures. There's no mystery as to why appellants focus on figures one, two, and six. Those are the least adjustable figures out of the patent. Figure nine includes and I'm quoting directly from the patent specification column nine, column 11 and appendix 84, 51 through 65. It states that the position of the elongated member in that environment can be very closely controlled when pulled towards the surface. It has an adjustable heel screw. It has grooves on the securement beams. That is, I think, a very good example, Your Honor of what it means to be able to select an operative position most convenient to the user when pushing or pulling. I think that's very important. Another important point, Your Honors and they accuse us of not looking at the claims holistically. They focus to the exclusion of convenience. They focus the exclusion of that phrase on the operative positions. The patentees knew very well how to claim this without resort to convenience. Claims 22 and 23, while they have other limitations in those claims, they speak just to moving the device to an operative position with no mention of convenience. So what are we left with here? We're left with a very specific limitation that was added during prosecution to overcome prior art and it did, in fact, overcome that prior art. We can't just say, well, hey, it was a mistake. They shouldn't have added that. My original question to you is, did you think the district court addressed all of this in its opinion? Because your original point was you said you were going to walk through the district court's analysis and show why it was correct. But I don't really see where the district court grappled with this part of the prosecution history. Am I missing something? The district court mentioned the prosecution history. I don't know that it really wasn't briefed in detail as to how, and I think the issue was, appellants argued that, well, the most convenient position wasn't focused on during prosecution. And our argument was simply that, look, we have to take this limitation for what it is. They added this phrase. We have to give every word a meaning. And it was added to overcome prior art. And I think that's the extent. I don't have it at my fingertips, but that's the extent to which she dealt with it. I have another question for you. Yeah, that answers. I understand your position. My other question to you is with respect to Q14, does it move in a plane? I'm sorry, I was talking. I didn't hear your answer. Yeah, I apologize, Your Honor. I think I spoke over you. No, I don't think Mr. Cochran is going to disagree with me. There is no evidence that it moves. In fact, it is designed not to move. This was, I'm not sure if this came through the briefing, this device was designed not to infringe this patent. So when it's inserted into the striker, it's designed not to move forwards or backwards. In the orientation that it's designed to work in, it would actually defeat the purpose. It wouldn't serve its purpose of providing support in that orientation. Thank you. Now, Your Honor, just on, I think really just one or two more points on this, on the district court's point of the term being subjective. Again, I think it was, Your Honor, Judge Lori pointed this out. The claim on its face requires us, requires us to inquire as to not only what the convenient position is, but what is the most convenient position. And on its face requires us to inquire to the user. And that's in the claims. There's no dispute here. Appellant has not argued that this phrase is objective. Appellant raises a very similar argument instead to what this court dismissed in datamines. In that case, the appellant argued, well, that was the aesthetically pleasing case. The appellant argued basically that, and this is at 1349 in the opinion, that subjective terms are permissible so long as one of ordinary skill in the art would understand their scope. That's essentially what appellant here is arguing, that we know what the operative positions are. We know what the outer boundaries are. Well, so that that phrase, the phrase most convenient to the user, it's minimal. It's negligible to the claims. But that's exactly what this court flatly rejected. Also in that case, the appellant argued that we have to look at the claim in a fulsome manner. And this court flatly rejected. Mr. Glass, just when it comes to the claim language here, we understand the case law. Most convenient to the user when pulling or pushing on said handle. I agree with you. Most convenient to the user is not pretty language to see in a claim. It's rather ugly. But nevertheless, could it be trying to get at the thought that there's one position, one operative position that's really designed for and more convenient for the user to push on the handle. And likewise, there is another operative position that is really the operative one most convenient to pulling on the handle. And if that's what the claim is getting at, that we're designing some flexibility to be able to have some limited movement of the device so that it's in the pushing operative position and the pulling operative position. This is sort of a follow-up to Judge Stoll's earlier question. Why is that an unreasonable takeaway from this final clause in Claim 2 and Claim 1? Well, two points, Your Honor. I think that even if that were the case, even if there were only two operative positions, the pushing and the pulling, that still, and that, I think, is incorrect. That's not what these claims are about. But even if that were true, it doesn't mitigate the subjectivity of the claims. And I'm not going to, I promise, I'll not go through the cases again, but we require objectivity. So the problem with that interpretation is that not only would the claims be infringed in different ways by different people, the claim could be infringed one day by someone who prefers pulling on it, and the next day not infringed if that person, for example, injured him or herself. So even if that was the case, that we're just talking about pushing or pulling, that wouldn't mitigate the very careful language they chose here. But that isn't the case. And again, I hate to keep repeating myself, but going back to Figure 9, that allows an almost unlimited amount of adjustability, both in the angle of the device, of the securement means, and the depth at which it's inserted into the striker. All of this allows different angles when you push or pull. Counsel, when I look at this claim, it has ten lines, and we're talking about one line with seven words, which doesn't seem to be quantitatively an important part of the claim. But would you say that that operative position, most convenient to the user, is really critical to the claim? I think, Your Honors, respectively, I think it is critical to the claims. It's what Gotham over the Bergstein reference. That's, remember, that... Counsel, this is Judge Stoll. I want to ask you something about your question about when one day the claim would be infringed and one day it would be infringed. How can that be so when this is a device claim and we're not talking about a method? That doesn't make sense to me. Well, the way, and again, Your Honor, this claim is not exactly the model of clarity, and I have considered and struggled with that very notion. The way I look at it is that that language is a further limitation on really the structure of the securement means, that it has to be so structured, and this is kind of analogous to the Ernie Ball case. It has to be structured such that it provides limited movement to an operative position most convenient to the user. But wait a minute. Not just that, though. It's limited movement within a claim that is substantially parallel to the fixed surface to at least one operative position most convenient to the user. I mean, it's not limited movement all over the place. It's limited movement, one for pushing, one for pulling. I mean, looking at the phrase as a whole, and I understand your position to be, well, you don't know within that range of movement, you don't know what is most convenient to the user. Is that right? Do I understand your position to be that? That's correct, and, Your Honor, I've possibly been living with this case long. I've shorthanded the limitation. I didn't mean to. But again, I'll finish very briefly. That is the issue, that limited movements within that plane. But again, those limited movements are not so limited if you look at Figures 9 and the other embodiments, for example, adjustable handles that are in the spec. Unless there are any questions, further questions, I think I've eaten up all of my time. I thank you, Your Honors. Thank you, Mr. Glass. Mr. Corcoran, we'll give you three minutes of rebuttal time back. Thank you, Your Honor. You're correct. The district court provided little analysis, a response to the prosecution history and the limitation that was added during prosecution to overcome the prior art. We think that at least the case should be remanded so that the district court would have an opportunity or should have an opportunity to address that so that we could clearly argue to the district court why this claim is not indefinite as a whole. Your Honor, the applicant did not rely on... Mr. Corcoran, sorry. Could you answer the question?  when the car cane is secured to a vehicle, there isn't any movement, let alone any movement within a plane substantially parallel to a fixed surface to have one operative position for pulling and one operative position for pushing. Is that right? No, Your Honor. The car cane, when it's inserted in the structure, can be pulled or pushed. No, but does it move? Does it ever move or does it stay stationary? It moves when you pull on it and it moves when you push on it. It somehow rotates? It pivots? No, but it mounts in the... The secure means mounts in the anchor and then it does have limited movement when pulling or pushing on the handle. Are you saying you can move it to one position for pushing and to a different position for pulling? Well, Your Honor, so you place the car cane in the striker, you can push down on the car cane or you can pull up on the car cane and there is some limited movement within the striker. Does the car cane move? Counsel? Yes, Your Honor. What? Does the car cane move? Does it move at any point? If the user uses the car cane to push, is it in the same position as the position it would be if the user used the car cane to pull? It's in the same position, Your Honor, but the angle within the striker, it rotates. How does it rotate within the striker? Because the secure means is smaller in diameter than the striker. So when you pull up on the car cane, the distance difference between the striker and the edge of the secure means, there is some limited movement there. Getting back to the indefiniteness of your most convenient to the user language, I'm more interested in how you would translate that entire final clause that both Judge Stoll and I have been wondering about, starting with the phrase, Zed securement means mounting, Zed elongate member for limited movements, all the way to the end of the claim. What's your best translation of what that means? What does that entire clause mean? I was looking for something in your briefs and I couldn't quite see a translation. Can you just right now give me a one-sentence translation of what that final clause means? My translation of that clause is that the striker is, I'm sorry, the device is mounted, the secure means of the device mounts into the striker. It is substantially parallel to the PIC service when it's secured into the striker. The operative positions are limited because once you put it into the striker, it's not going to move. It's going to move up or it's going to move down when you push or pull. And whether the position is most convenient for the user, it's really neither here nor there because the device is restricted to applying substantially parallel to the PIC service with limited movement. So in reality, when you're using it, whether you're a big guy, a small guy, a little girl or a big girl, it's going to go into the striker and you can pull on it or you can push on it and that's about all it's going to do. Thank you, counsel. Case will be taken under submission. Thank you, both counsel. Thank you, Your Honor. Thank you, Your Honor. The Honorable Court is adjourned until tomorrow morning at 10 a.m.